UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

LINWOOD BRANT,

    Plaintiff

v. : CIVIL NO. 3:CV-13-212

D. VARANO, et al., : (Judge Kosik)

    Defendants

## MEMORANDUM

Plaintiff, Linwood Brant ("Plaintiff"), an inmate presently incarcerated at the State Correctional Institution at Greene, Pennsylvania, initiated the above civil rights action pursuant to 42 U.S.C. § 1983. The matter proceeds on an amended complaint. (Doc. 14.) The allegations concern incidents occurring at SCI-Coal Township, Plaintiff's former place of confinement. Named as Defendants are sixteen (16) individuals employed at SCI-Coal Township at the relevant time.[1] Presently pending is Defendants' motion to dismiss the amended complaint. (Doc. 17.) For the reasons that follow, the motion will be granted in part and denied in all other respects.

---

[1] Named as Defendants are the following: Superintendent Varano, Major Miller, Security Captain Stetler, Unit Manager Klock, Lieutenants Shipe, Eveland, Symons and Williams, Correctional Officers Baker, Drucis, Knarr, Metzinger, Deremer, Fox and Kimbrel, and Hearing Examiner Kerns-Barr.

I. **Allegations in the Amended Complaint**

Plaintiff alleges that on February 25, 2011, he was placed in the Restricted Housing Unit ("RHU") for assault. On March 6, 2011, he was taken to the Security Office to inventory his personal property that had been removed from his former cell. Present were Defendants Eveland, Baker and Drucis. (Doc. 14, Am. Compl. at 2.) Upon review of the property, Plaintiff said a tv remote, commissary items and legal property related to his ongoing PCRA action were missing. As such, he refused to sign the confiscation slip. (Id.) He learned that Defendants Knarr and Kimbrel were the officers who had packed up his property and brought it to the security office. Later the same day, Plaintiff sent a request slip to Defendants Klock and Miller with respect to the missing property.

On March 11, 2011, Defendants Knarr and Metzinger were in the RHU and told Plaintiff that he was a "pain in the a\*\*" and that they had thrown his legal property away. (Id.) On March 18, 2011, Plaintiff complained to Defendant Stetler about the missing property, but Stetler ignored his complaints. The following day, Defendant Shipe was told about the missing property and failed to respond to Plaintiff's complaint. (Id. at 3.) Several days later, when Plaintiff complained to Defendant Varano about the property, he merely referred him to the same individuals that had already failed to respond to his complaints. When Varano visited the RHU on April 7, 2011, he told Plaintiff not to be such a pain, and that if the issue came across his desk,

2

he would say that Plaintiff gave his documents to others. (Id.)

On February 26, 2011, inmates saw the legal property in the trash and took it to Defendant Deremer, who did nothing about it. Thereafter, the inmates took the property to Defendant Williams. On April 18, 2011, Plaintiff learned that other inmates had witnessed Defendants throwing his legal papers in the trash. The following day, he spoke to Williams about the matter. Williams said he would look into it. One of the inmates who had retrieved the legal materials from the trash was told by Defendants Deremer and Williams to forget about the material he found. Williams also remarked that Plaintiff was not getting his papers because he had filed a grievance against Defendant Knarr. This inmate was also approached by Defendant Shipe. The inmate told Shipe that he saw Defendants Knarr, Kimbrel and Fox pack up Plaintiff's stuff on February 25, 2011, and saw Knarr throw it away. (Id. at 3.)

On April 21, 2011, Defendant Symons delivered nine (9) legal papers to Plaintiff that he had received from Williams. The papers relating to Plaintiff's PCRA action were not among these papers. As such, Plaintiff was advised to pursue this issue by filing a grievance. On July 1, 2011, Defendant Williams threatened to harm Plaintiff's property that was still in storage due to his filing of grievances. (Id. at 4.)

On August 10, 2011, upon being transferred to a different prison, Plaintiff learned that his legal property and other items in storage had been destroyed. He thereafter filed grievances and appeals therefrom. On January 7, 2013, Plaintiff

received a decision denying his PCRA petition, and claims this was due to Defendants' actions in confiscating and destroying his legal property. (Id. at 5.)

Plaintiff also sets forth due process challenges with respect to the misconduct charges brought against him for the assault that resulted in his placement in the RHU on February 25, 2011. He claims that Defendant Kerns-Barr, the Hearing Examiner, did not conduct the hearing properly, was biased, and had no evidentiary basis for finding him guilty and for imposing a 90 day RHU sanction. Appeals filed therefrom, including an appeal to Defendant Varano, were all denied. Varano told Plaintiff he denied the appeal because of the grievances Plaintiff pursued regarding the destruction of his property. (Id. at 6.)

An appeal taken by Plaintiff to the Central Office resulted in the overturning of the Hearing Examiner's decision, and a new hearing was ordered. Plaintiff appeared before Kerns-Barr again on May 26, 2011. He claims that he did not receive proper notice of this hearing and was not provided with new witness and version forms. He claims that he was forced to sign an extension of time form under duress, and was subjected to verbal abuse by Kerns-Barr. Kerns-Barr again did not permit him to have witnesses, and found him guilty of the charges. He was sanctioned to 90 days disciplinary custody. Plaintiff claims that he was denied due process in retaliation for exercising his right to file grievances and appeals. As relief for the foregoing, he seeks compensatory and punitive damages. (Id. at 6-7.)

4

## II. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the ... claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1947, 173 L. Ed. 2d 868 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while

5

mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. at 1950, 173 L. Ed. 2d 868 (citing Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 662, 129 S. Ct. at 1949, 173 L.Ed.2d 868. When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### III. Discussion

Defendants seek to dismiss the amended complaint on the grounds that: (1) Plaintiff fails to allege personal involvement on the part of some of the Defendants and/or they merely denied his inmate grievances and appeals; (2) the claims of verbal threats and verbal abuse against Defendants do not amount to constitutional violations; and (3) Plaintiff has failed to allege that Hearing Examiner Kerns-Barr violated his procedural due process rights during the misconduct hearings. The court will address each of these arguments in turn.

A.  **Personal Involvement and/or Denial of Inmate Grievances and Appeals**

To state a viable § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Natale v. Camden County Corr. Facility, 318 F.3d 575, 580-81 (3d Cir. 2003). Personal involvement in the alleged wrongdoing is necessary for the imposition of liability in a civil rights action. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005); Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003). A supervisory defendant may be liable if he directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). A civil rights complaint is adequate if it states the conduct, time, place and persons responsible for the alleged civil rights violations. Evancho, 423 F.3d at 353. There is no respondeat superior liability in § 1983 actions. Id. Additionally, participation in the after-the-fact review of a grievance is not enough to establish personal involvement. See, e.g. Rode, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006)(per curiam)(allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation);

Burnside v. Moser, 138 F. App'x 414, 416 (3d Cir. 2005)(per curiam)(failure of prison official to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).

Defendants maintain that the requisite personal involvement is lacking with respect to Defendants Varano, Miller, Stetler, Klock, Shipe and Williams in that they are only alleged to have failed to properly respond to verbal and written complaints made by Plaintiff about his legal materials. Based upon the above legal standards, the court agrees that Defendants Miller, Stetler, Klock and Shipe should be dismissed from this action on the basis of lack of personal involvement. The court will also dismiss Defendant Symons from this action for the same reasons. The only allegations set forth against Symons are that he delivered nine (9) legal papers to Plaintiff at Defendant Williams' request and advised Plaintiff to pursue the issue of missing legal materials through the grievance system. Defendants Varano and Williams, however, will not be dismissed at this juncture on the basis of lack of personal involvement.

Defendants further argue that Eveland, Baker and Drucis were merely present at the inventory of Plaintiff's property, and as such, must also be dismissed from this matter. The court agrees that said Defendants were not personally involved in any of the constitutional violations alleged and will dismiss them from this action.[2]

---

[2] Also named as a Defendant in the amended complaint is Correctional Officer Fox. It does not appear that Fox was ever served with the amended complaint in this action, as he was not served with the original complaint. Regardless, there are no

8

### B. Verbal Threats and Remarks

Without unnecessary elaboration, the court will not address this basis for dismissal as raised by Defendants. In his brief in opposition to Defendants' motion, Plaintiff clarifies that he is not seeking to impose constitutional liability against Defendants on the basis of verbal remarks and threats.

### C. Due Process

Defendants also move to dismiss Hearing Examiner Kerns-Barr from this action because Plaintiff has failed to allege that she violated his procedural due process rights during the misconduct hearings. In analyzing a due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000)(citing Fuentes v. Shevin, 407 U.S. 67 (1972)). Once the court determines that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Protected liberty or property interests generally arise either from the Due Process Clause or from some specific state-created statutory entitlement. See Board of Regents v. Roth, 408 U.S. 564, 575

---

allegations that he was personally involved in the alleged conduct. Rather, he is only alleged to have assisted in the packing up of the property in Plaintiff's cell on February 25, 2011, and not alleged to have participated in any way in the destruction of the property. As such, pursuant to the court's inherent screening authority, see 28 U.S.C. § 1915(e)(2)(B)(ii), he will be dismissed from this action as well.

9

(1972). However, in the case of prison inmates,

> [i]n Sandin v Conner, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees. Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an '*atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*' . . . In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143-44 (citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings which result in sanctions of disciplinary segregation for six months and even more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and, therefore, do not give rise to due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement). See, e.g., Dunbar v. Barone, 12-1337, 2012 WL 2775024 (3d Cir. July 10, 2012)(Finding that inmate placed in disciplinary custody for 540 days as a result of misconduct and presenting no evidence that conditions he faced in disciplinary custody amounted to an "atypical and significant hardship," does not amount to due process violation under Sandin); Griffin v. Vaughn, 112 F.3d 703, 705-

07 (3d Cir 1997)(ruling that fifteen months in segregation was not an atypical and significant hardship); Henderson v. Kerns-Barr, 313 F. App'x 451, 452 (3d Cir. 2008)(90 day disciplinary confinement did not implicate a liberty interest.) As such, to the extent that Plaintiff advances due process claims against Kerns-Barr, he has failed to articulate a sufficient liberty interest to trigger a valid due process claim in this prison setting, and such allegations fail to state a claim. For these reasons, Defendants' motion to dismiss will be granted with respect to the due process claims against Kerns-Barr.

### IV. Remaining Claims in Amended Complaint

In filing their motion to dismiss, Defendants fail to acknowledge other claims clearly set forth by Plaintiff in his amended complaint. These claims include the following: (1) denial of access to the courts by Defendants Knarr, Kimbrel, Metzinger, Deremer and Williams with respect to the confiscation and destruction of legal documents relating to Plaintiff's PCRA petition that was allegedly dismissed and (2) his claims of retaliation. As such, and without passing judgment as to the ultimate success of any such claims, they will proceed at this juncture. An appropriate order follows.