**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LINWOOD BRANT,** | : | |
| | : | **Civil No. 3:13-CV-212** |
| **Plaintiff** | : | |
| | : | **(Judge Kosik)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **D. VARANO, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This *pro se* civil rights action brought by Linwood Brant, a state inmate, comes before us for consideration of a motion for summary judgment which challenges the legal sufficiency of two claims made by Brant, a denial of access to the courts claim and a separate retaliation claim. These two legal claims are advanced by Brant against a factual backdrop which is, in many respects, wildly implausible. For the reasons set forth below, we find that, with respect to the access to courts claim, the implausibilities in what Brant alleges, coupled with the undisputed facts, defeats this claim as a matter of law. Therefore, we recommend that the Court grant summary judgment on this claim.

As for Brant's retaliation claim, this claim fails as a matter of law with respect to two defendants, defendants Kimbrel and Varano. As for the remaining defendants, this retaliation claim hangs by unlikely threads, but those threads define for us a factual dispute which is not amenable to summary judgment resolution. Therefore, as to this claim it is recommended that the defendants' motion for summary judgment denied, at least in part.

## II.   **Factual Background**

With respect to the apparent factual backdrop of these two legal claims, the pertinent facts are as follows:

### A.   **Brant's Access to Courts Claim**

Brant's access to courts claim attempts to stitch together events that are separated by a decade or more and tries to combine these disparate events into a tapestry of unconstitutional conduct. According to Brant, in January of 2002 he had a video conference probation violation hearing from prison. In the course of this 2002 hearing Brant alleges that he was excluded from the room where the video hearing was being conducted, and prison staff who are not named as defendants in this action falsely told the hearing judge that Brant refused to participate in the hearing. According to Brant following this hearing his probation was revoked.

Brant alleges that he timely appealed and challenged this revocation in 2003 and attempted to alert the Court to his unlawful exclusion from this hearing but was stymied by various prison officials, none of whom are named as defendants in this lawsuit. According to Brant prison officials failed to mail a pleading in 2003 which would have advanced this argument, and these efforts in 2003 to challenge his conviction were unsuccessful.

Even through Brant seems to allege that he knew of his exclusion from this hearing for many years, nine years then passed, until 2011 when Brant asserts that he learned through a series of bizarre circumstances that his prior efforts at post conviction relief had been frustrated by the failure to mail a pleading to the Court in 2003.[1] Brant alleges that he documented these peculiar circumstances in an amended post-conviction petition which he filed, but that he was then frustrated in his efforts to perfect this tardy claim when he was disciplined in February 2011 following a

---

[1]In Brant's telling, an inmate he never met accidentally received a copy of the state post conviction pleadings he was trying to file in 2003. That inmate tried to return the pleadings to prison staff for mailing but was rebuffed by staff in 2003 who told this inmate that they were going to "fuck [Brant] over." Inexplicably, these prison staff then allowed the inmate to keep Brant's legal paperwork after describing to this inmate their intention to obstruct the filing of that legal work in blunt Anglo Saxon terms. The inmate then began a decade long legal odyssey to return the paperwork to Brant, a journey which concluded nine years later when the inmate found a friend of Brant's who returned the paperwork to Brant along with this particularly convoluted explanation.

citation for assaulting another person. At that time Brant claims he was transferred to a Restricted Housing Unit, and his property, including records relating to the extraordinary journey of his post-conviction paperwork, was seized and destroyed by prison staff.

While Brant cites the destruction of this paperwork as the basis for his denial of access to the courts claim, it appears undisputed that Brant actually filed a post-convection relief act petition in state court in 2011. It is also entirely uncontested that Brant had counsel appointed for him in this case. That counsel later reported to the Court that there were not issues of merit in Brant's petition. Furthermore, the state court denied Brant's petition after considering Brant's convoluted explanation for the delay and bringing these claims, apparently finding that Brant's elaborate description of the mishaps which had befallen his paperwork did not justify a decade-long delay in litigating this claim.

It is on the basis of the alleged obstruction of this belated, and unsuccessful, legal claim advanced by Brant with the assistance of counsel, that Brant now asserts a claim that he was unconstitutionally denied access to the courts.

## B.     <u>Brant's Retaliation Claim</u>

Brant's retaliation claim also arises out of the alleged destruction of his legal paperwork by prison staff following his February 2011 citation for a prison assault,

and his transfer to the Restricted Housing Unit.  Like his access to courts claim, this retaliation claim rests upon an extraordinary and implausible series of circumstances.

According to Brant following his removal from his cell prison staff, including Lieutenant Williams and Correctional Officers Knarr, Metzinger, Deremer, and Kimbrel, participated in efforts to destroy his legal paperwork in retaliation for Brant's prior grievances and litigation.  The efforts described by Brant, however, are marked in an implausible way by surreptitious conduct coupled with candid admissions of wrongdoing, and a series of coincidences that seem to strain credulity.

Thus, Brant alleges that following his citation and transfer defendant Knarr seized and discarded these records in the presence of other inmates and staff.[2]  When those other inmates retrieved these documents, Brant contends they tried to return them to defendant Correctional Officer Deremer on February 26-28, 2011, but Deremer refused the records, a claim whose plausibility is strained given that prison records seem to indicate that Deremer was not on duty at the time of these events.  Having indulged in this surreptitious behavior, Brant then alleges that in a stunning

---

[2]According to Brant one of these staff who was present when Knarr discarded documents was defendant Correctional Officer Kimbrel.  Kimbrel's mere presence when Knarr is alleged to have thrown away paperwork is the only allegation we can discern relating to this particular defendant.  See Doc. 55, p. 12 "While Knarr threw away plaintiff legal box Kimbrel watched and did nothing to stop him."

series of indiscretions defendants Knarr, Deremer, Metzinger and Lieutenant Williams, all admitted to various inmates, including the plaintiff, that they had retaliated against Brant.  Finally, Brant contends that he complained after-the-fact to defendant Varano, the prison superintendent, but Varano failed to act upon these complaints.

It is in the face of these starkly contrasting factual narratives that we are invited by defendants to grant summary judgment in their favor on Brant's access to courts and retaliation claims.  While we find that Brant's access to courts claim fails as a matter of law, and conclude that Brant has not stated viable retaliation claims against defendants Kimbrel and Varano, recognizing that determinations of credibility and the weighing of evidence are improper in a summary judgment setting, for the reasons set forth below, it is recommended that this motion for summary judgment be denied with respect to the remaining defendants named in Brant's retaliation claim.

## II.   <u>Discussion</u>

### A.   <u>Rule 56–The Legal Standard</u>

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P., Rule 56 (a).  Through summary adjudication a court is empowered to dispose

of those claims that do not present a "genuine issue as to any material fact," Fed. R.

Civ. P. 56, and for which a trial would be "an empty and unnecessary formality."

Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS

31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes

over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is

a sufficient evidentiary basis that would allow a reasonable fact finder to return a

verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes

shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec.

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown

that there is an absence of evidence to support the nonmoving party's claims, "the

non-moving party must rebut the motion with facts in the record and cannot rest

solely on assertions made in the pleadings, legal memoranda, or oral argument."

Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . .

., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982).  "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).  In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); Iseley v. Beard, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true).

Yet, while "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment," Countryside Oil Co., Inc. v. Travelers

Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995), and "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).   Therefore, in a case where the parties' pleadings reveal disputes regarding the admissibility of specific evidence, the principles governing consideration of summary judgment motions –which enjoin us to examine the evidence in a light most favorable to the party opposing the motion–also call upon us to resolve all genuine disputes concerning the admissibility of specific items of evidence in favor of the party opposing the motion.   This principle applies with particular force to factual disputes which relate to matters of motive or intent since it is well-settled that:  "The motive or absence of motive of a party to engage in conduct alleged by another party is relevant to determining whether a genuine issue of fact exists.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 596 (1986)."  Berda v. CBS Inc., 800 F.Supp. 1272, 1276 (W.D.Pa), aff'd., 975 F.2d 1548 (3d Cir. 1992).

Further, it is emphatically not the province of the court to weigh evidence, or assess credibility, when passing upon a motion for summary judgment.  Rather, in adjudicating the motion, the court must view the evidence presented in the light most

favorable to the opposing party, <u>Anderson</u>, 477 U.S. at 255, and draw all reasonable

inferences in the light most favorable to the non-moving party, <u>Big Apple BMW, Inc.</u>

<u>v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).   Where the

non-moving party's evidence contradicts the movant's, then the non-movant's must

be taken as true.   <u>Id.</u>   Additionally, the court is not to decide whether the evidence

unquestionably favors one side or the other, or to make credibility determinations, but

instead must decide whether a fair-minded jury could return a verdict for the plaintiff

on the evidence presented.   <u>Id.</u> at 252; <u>see also</u> <u>Big Apple BMW</u>, 974 F.2d at 1363.

In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not
> match, item for item, each piece of evidence proffered by the movant.
> In practical terms, if the opponent has exceeded the "mere scintilla"
> threshold and has offered a genuine issue of material fact, then the court
> cannot credit the movant's version of events against the opponent, even
> if the quantity of the movant's evidence far outweighs that of its
> opponent.   It thus remains the province of the fact finder to ascertain the
> believability and weight of the evidence.

<u>Id.</u>   In contrast, "[w]here the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita</u>

<u>Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal

quotation marks omitted); <u>NAACP v. North Hudson Reg'l Fire & Rescue</u>, 665 F.3d

464, 476 (3d Cir. 2011).

### B.   Brant's Access to Courts Claim Fails as a Matter of Law

Judged against these standards, we find that Brant's access to the courts claim fails as a matter of law.  As we have noted, this claim is based upon Brant's assertion that the alleged destruction of documents in 2011 fatally impaired his efforts to litigation a post-conviction claim pertaining to a probation revocation which occurred nine years earlier in 2002.  Brant insists that the loss of these documents was fatal to this petition, despite the fact that he had the assistance of counsel in his state post-conviction case, and the state court denied his petition as untimely due to other delays in litigating this claim by Brant, reasoning quite sensibly that Brant, who knew of this alleged misconduct when it occurred in 2002, needed to act with greater alacrity to preserve his legal rights to post-conviction relief.

In our view, this constitutional tort claim fails since the plaintiff has not shown that he was denied access to the courts in a fashion which offends the Constitution. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law.  Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to

assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in <u>Lewis v. Carey</u>, 518 U.S. 343 (1996).  In <u>Lewis</u>, the court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims.  As the court observed:

> Because <u>Bounds</u> did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . .  Insofar as the right vindicated by <u>Bounds</u> is concerned, "meaningful access to the courts is the touchstone," <u>id</u>., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. . . . .  Although <u>Bounds</u> itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which <u>Bounds</u> relied . . . . Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. <u>Id</u>.,at 832, 97 S.Ct., at 1500.

<u>Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996).

Thus, following <u>Lewis</u>, courts have consistently recognized several guiding principles which animate access-to-court claims by prisoners.  First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim.  <u>See, e.g.</u>, <u>Oliver v. Fauver</u>, 118 F.3d 175 (3d Cir. 1997); <u>Demeter v. Buskirk</u>, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); <u>Castro v. Chesney</u>, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998).  A necessary corollary to this principle is that, in order to prevail on an access to the courts claim, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim."  <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002).  Thus:

> Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"- that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit.  <u>See</u> <u>Christopher v. Harbury</u>, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it  is "more than mere hope," and it must describe the "lost remedy."  <u>See</u> <u>id.</u> at 416-17, 122 S.Ct. 2179.

<u>Monroe v. Beard</u>, 536 F.3d 198, 205-06 (3d Cir. 2008)

Moreover, consistent with the Supreme Court's express view that " 'we encourage local experimentation' in various methods of assuring access to the courts," <u>Lewis v. Casey</u>, 518 U.S. at 352, courts have long recognized that public

officials can provide meaningful access to the courts through a wide variety of means, including the appointment of counsel, a measure which was taken here. Thus, "[w]here a prisoner is provided an attorney by the state to represent him . . ., the prisoner's right to access to the courts is vindicated.  Peterkin v. Jeffes, 855 F.2d 1021, 1042 (3d Cir.1988)."  Cook v. Boyd, 881 F.Supp. 171, 176 (E.D.Pa.1995). Recognizing the discretion conferred to public officials in this field, it has been held that:

> A . . . detainee's access to court appointed counsel satisfies his right to meaningful access to the courts. See Peterkin v. Jeffes, 855 F.2d 1021, 1042 (3d Cir.1988) (construing "Bounds to hold that the provision of lawyers is one means by which a state may provide prisoners with meaningful access to courts"); Bourdon v. Loughren, 386 F.3d 88 (2d Cir.2004) (appointment of counsel can be a valid means of fully satisfying constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts); United States v. Smith, 907 F.2d 42, 45 (6th Cir.1990) ("the state does not have to provide access to a law library to defendants in criminal trials who wish to represent themselves" and waive their right to counsel); Howland v. Kilquist, 833 F.2d 639, 643 (7th Cir.1987) ( "trial court's offer of appointment of counsel in [the criminal] proceedings, and the appointment of standby counsel, satisfied any obligation which the state had to provide [the inmate] with legal assistance"); Love v. Summit County, 776 F.2d 908, 914 (10th Cir.1985) (where detainee had access to his counsel at all times during his incarceration, he "did not show that he was denied access to adequate legal assistance to help him prepare and pursue his claims before the courts or that defendants in any significant way restricted that access"); Smith v. County of Santa Clara, 223 F. App'x 701 (9th Cir.2007) (not published) (pretrial detainee's access to court-appointed counsel satisfied right to meaningful access to the courts,

even if the law library available to him in the county jail was inadequate).

Hester v. Morgan, No. 10-309, 2010 WL 3907770, *2 (D.Del.Sept. 29, 2010). Accordingly, courts have repeatedly held that access-to-court claims like those advanced here fail as a matter of law when it is shown that the plaintiff had the assistance of court-appointed counsel. See, e.g., Tinsley v. Del Rosso, No. 08-1251, 2008 WL 2236598 (D.N.J. May 30, 2008); Tormasi v. Hayman, No. 07-5683, 2008 WL 1995125 (D.N.J. May 6, 2008); Annis v. Fayette County Jail, No. 07-1628, 2008 WL 763735 (W.D. Pa. March 20, 2008); Hunter v. Shoupe, No. 06-1023, 2007 WL 120030 (W.D. Pa. Jan. 10, 2007); United States ex rel. Russell v. Hendrick, 376 F.Supp. 158 (E.D.Pa. 1974).

These legal tenets control here, and are fatal to this access to the courts claim as it is currently pleaded for at least two reasons. First, to make such a claim the plaintiff "must describe the underlying arguable [legal] claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.' " Monroe v. Beard, 536 F.3d 198, 206 (3d Cir. 2008). Here, Brant has failed to identify a claim that was more than a mere hope, an essential prerequisite to a constitutional tort in this setting. Brant's suggestion that the loss of this alleged paperwork defeated his tardy state post-conviction petition is unavailing. Rather, it is apparent that what defeated this claim was Brant's failure to actively litigate and advocate the claim in

16

the nine years that elapsed between his state parole hearing, and the filing of this 2011 post-conviction petition.[3]

Moreover, consistent with the Supreme Court's express view that " 'we encourage local experimentation' in various methods of assuring access to the courts," Lewis v. Casey, 518 U.S. at 352, courts have long recognized that public officials can provide meaningful access to the courts through a wide variety of means, including the appointment of counsel. Here, counsel was appointed to represent Brant but could find no meritorious claims to pursue on the plaintiff's behalf. This immutable fact defeats Brant's access-to-courts claims since courts have repeatedly held that access-to-court claims like those advanced here fail as a matter of law when it is shown that the plaintiff had the assistance of court-appointed counsel. See, e.g., Tinsley v. Del Rosso, No. 08-1251, 2008 WL 2236598 (D.N.J. May 30, 2008);

---

[3]Apparently recognizing this legal flaw in his access to courts claim based upon this tardy post-conviction relief act petition, on summary judgment Brant asserts for the first time that he also lost paperwork relating to a previously unidentified civil rights lawsuit. The short answer to this new, and belated, claim is that it is well-settled that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion. Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6).").

Tormasi v. Hayman, No. 07-5683, 2008 WL 1995125 (D.N.J. May 6, 2008); Annis v. Fayette County Jail, No. 07-1628, 2008 WL 763735 (W.D. Pa. March 20, 2008); Hunter v. Shoupe, No. 06-1023, 2007 WL 120030 (W.D. Pa. Jan. 10, 2007); United States ex rel. Russell v. Hendrick, 376 F.Supp. 158 (E.D.Pa. 1974).

Here, Brant had the assistance of counsel in his state post-conviction litigation. That counsel reviewed Brant's PCRA filings, and reported to the court that there were no meritorious issues in this post-conviction petition. The court, in turn, considered Brant's excuses for failing to file a timely petition, and found them wanting given Brant's inaction over many years. These facts, rather than the alleged loss of documents of questionable provenance, explains the failure of this post-conviction claim, and is now fatal to any assertion by Brant that we was denied access to the courts in a way which offends the constitution.

> **C.** **While Defendants Varano and Kimbrel Should Be Dismissed, Disputed Issues of Fact Preclude Summary Judgment for the Remaining Defendants Named in Brant's Retaliation Claim**

Turning next to the plaintiff's retaliation claim, Brant faces a demanding burden of proof in attempting to allege such a retaliation claim. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements: (1) the conduct in which he engaged

was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

The third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner.  Rauser, 241 F.3d at 333-34.  To establish this third, and crucial, component to a constitutional retaliation claim, causation, the plaintiff must make an exacting showing.  In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997).  In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished that:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate.  Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take.  The point we make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events.  Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds.  Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct.  In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized inmate claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts.  Indeed, this Court has

spoken directly to the issue of what must be shown to state a valid complaint in this

factual context, noting that:

> To establish the causation element of a retaliation claim, a plaintiff must
> prove that his or her participation in a protected activity motivated the
> defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson,
> 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-
> CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing
> that a plaintiff must demonstrate that the exercise of First Amendment
> rights "played some substantial role" in the defendant's action).  The
> temporal proximity of a retaliatory act to a plaintiff's exercise of his or
> her First Amendment rights is probative, but not dispositive, of the
> causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d
> Cir.2003); see also Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173,
> 178 (3d Cir.1997) (stating that "temporal proximity merely provides an
> evidentiary basis from which an inference can be drawn").  For temporal
> proximity alone to establish causation, the "timing of the alleged
> retaliatory action must be 'unusually suggestive' of retaliatory motive
> before a causal link will be inferred." Marasco, 318 F.3d at 512
> (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997))
> . . . [T]he Third Circuit Court of Appeals has suggested that a temporal
> proximity of two days is sufficient to establish causation, see Farrell v.
> Planters Lifesavers Co., 206 F.3d 271, 279 & n. 5 (3d Cir.2000),
> whereas a temporal proximity of ten days is sufficient to establish
> causation only when accompanied by other evidence of . . .
> wrongdoing, Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189
> (3d Cir.2003).  This suggests that the temporal proximity must be
> measured in days, rather than in weeks or months, to suggest causation
> without corroborative evidence.

Conklin v. Warrington Tp., No. 06-2245,  2009 WL 1227950, *3 (M.D.Pa. April

30,2009)

Applying this standard, courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks or months separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation. Thus, "[o]ur sister courts have held that a temporal proximity of as little as seventeen days was insufficient to establish causation. See Killen v. N.W. Human Servs., Inc., No. 06-4100, 2007 WL 2684541, at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D.Pa. Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); Mar v. City of McKeesport, No. 05-19, 2007 WL 2769718, at *4 (W.D.Pa. Sept.20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)." Fischer v. Transue, 04-2756, 2008 WL 3981521, *10 (M.D.Pa. Aug. 22, 2008)(holding that temporal proximity of three weeks was insufficient to establish causation).

In this case, we find that summary judgment is appropriate as to defendants Kimbrel and Varano on this retaliation claim because Brant's allegations simply do not show any actionable retaliation by either defendant. As for defendant Kimbrel

22

it is simply alleged that he was present when documents were discarded by other staff. Defendant Varano, in turn, is alleged to have merely rejected grievances lodged by Brant after-the-fact.

More is needed to state constitutional tort liability. At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison officials when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d

1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of  evidence of knowledge and approval of another's actions, a plaintiff may not maintain an action against prison officials based upon the misdeeds of others. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).  Rather,

"[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)."  Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, as to defendant Kimbrel, Brant simply alleges that he was present when another defendant, Correctional Officer Knarr, acted.  These allegations fail to demonstrate either participation, or knowledge and acquiescence in unconstitutional conduct in our view and compel dismissal of Kimbrel as a defendant.

Furthermore, to the extent that the supervisory liability claims against defendant Varano rest on the premise that this official did not after-the-fact act favorably upon his past grievances, this claim also fails.  An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances.  Inmates do not have a constitutional right to a prison grievance system.  Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").  Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim.  See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis

25

for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).  <u>See also</u> <u>Cole v. Sobina</u>, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").  As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system.  The district court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.  <u>See</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); <u>see also</u> <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

<u>Pressley v. Beard</u>, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has  held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances.  <u>See</u> <u>Inmates of Attica</u>

Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, as presently drafted, the plaintiff's claims against this supervisory defendant consists of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with the processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, defendant Varano is entitled to be dismissed from this case.

However, as for the remaining defendants named in this retaliation claim resolution of the particular prison retaliation claims advanced by Brant entails a fundamental credibility assessment and the weighing of two divergent and irreconcilable factual narratives.  It is not the province of the court to weigh evidence, or assess credibility, when passing upon a motion for summary judgment.  Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).  Here, we find Brant's retaliation claims strained and implausible, but not amenable to resolution on summary judgment once we draw all reasonable inferences in the light most favorable

to the non-moving party, <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

In sum, since, at a minimum there seem to be factual disputes regarding the retaliation claims lodged by Brant against defendants Williams, Demerer, and Knarr in this lawsuit, and given that our mandate in passing on a motion for summary judgment does not permit us to weigh evidence or assess credibility, summary judgment is inappropriate on these issues, and the defendants' motion for summary judgment should be denied as to these defendants.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment (Doc. 49.) be GRANTED, in part, and DENIED, in part, as follows:

1.    The plaintiff's access-to-courts claim should be DISMISSED.

2.    Defendants Kimbrel and Varano should be DISMISSED from the plaintiff's retaliation claim.

3.    In all other respects the motion for summary judgment should be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of March 2016.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge